UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD WELLS,

    Plaintiff,

       v.                                      No. 3:15-cv-339(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RECOMMENDED RULING ON PENDING MOTIONS

Plaintiff Richard Wells has filed this appeal of the adverse decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 14]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 15]. The undersigned heard oral argument on March 1, 2016. For the reasons set forth below, the Court recommends the decision of the Commissioner be affirmed.

### Legal Standard

The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

**Background**

Plaintiff's application for DIB alleged a disability onset date of November 27, 2010. His application was denied initially and upon reconsideration. A hearing was held before Administrative Law Judge James E. Thomas (the "ALJ") on March 28, 2013. The ALJ issued an unfavorable decision on June 12, 2013. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. This action followed.

Plaintiff was fifty-seven years old on the alleged onset date, and was sixty years old at the time of the hearing. He has a high school diploma. Plaintiff has prior experience working as a maintenance technician, truck driver, and armed security guard. At oral argument, the parties stipulated to the facts as set forth in Plaintiff's brief and Defendant's brief, which the Court adopts and incorporates by reference herein.

**The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 19). At step two, the ALJ found the following severe impairments: chronic low back pain, left shoulder pain status post scapular fracture, chronic obstructive pulmonary disease, and obesity.[1] (R. 19). At step three, the ALJ found that these impairments, alone or in combination, did not meet or equal the severity of one of the listed impairments. (R. 21). The ALJ then found that Plaintiff retained the following residual functional capacity:[2]

> Plaintiff can perform light work except he can frequently balance, stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs; and can never climb

---

[1] The ALJ found that Plaintiff's diabetes, hypertension, benign prostate hypertrophy, and depression were not severe.
[2] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his limitations. 20 C.F.R. § 404.1545(a)(1).

>ladders, ropes, and scaffolds.  He can tolerate exposure to a mild level of
>pulmonary irritants.

(R. 21-25).  At step four, the ALJ found Plaintiff was unable to perform past relevant work.  (R. 25).  Finally, at step five, the ALJ relied on the testimony of a vocational expert ("VE") in finding that Plaintiff acquired skills from past relevant work which are transferrable to other occupations with jobs existing in significant numbers in the national economy.  (R. 26).  Accordingly, the ALJ found Plaintiff to be not disabled.

## Discussion

Plaintiff raises several issues on appeal, which the Court will discuss in the order of emphasis given at oral argument.

1. Transferability of skills

Plaintiff first argues that the ALJ erred in crediting the VE's testimony that Plaintiff had acquired skills in his prior work as an armed guard and that these skills were transferrable.  At the hearing, Plaintiff testified that he began to work for a security group in early 2012.  (R. 44).  This position involved him meeting a client at a jewelry store, protecting the client back to his car after the client made a purchase, and then following the client in a car for about twenty-five miles to ensure no one was trailing the client.  (R. 45).  Plaintiff performed this work while carrying a firearm.[3]  (*Id.*).  Plaintiff's armed guard work also required him to guard a technician who was changing out an ATM machine.  (R. 47).  In fulfilling this task, Plaintiff would stand for five to six hours at a time.  (*Id.*).

The VE testified that the armed guard position was semi-skilled and of medium exertional level per the Dictionary of Occupational Titles.  (R. 54).  The VE went on to testify

---

[3] Plaintiff additionally testified that even though he had not fired his weapon in ten years, he felt himself to be "more capable than a lot of … police officers."  (R. 46).

3

that an individual with Plaintiff's assessed RFC could perform the position of security guard, which is a semi-skilled, light duty position. (R. 56-57). The VE explained that Plaintiff's skills from the armed guard position would transfer to the security guard position, giving him preference over someone who did not have that prior experience. (R. 57). These skills include being aware of security procedures, knowing "how to observe … how to be a visual deterrent," and being able to "observe behavior that would be suspect." (*Id.*).

The regulations consider a claimant's age and work experience when determining whether the claimant can engage in other work:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work … that you can do despite your impairment(s). We will decide if you have transferable skills as follows… If you are of advanced age but have not attained age 60, and you have a severe impairment(s) that limits you to no more than light work, we will apply the rules in paragraphs (d)(1) through (d)(3) of this section to decide if you have skills that are transferable to skilled or semiskilled light work (see § 404.1567(b)).

20 C.F.R. § 404.1568 (d)(4). In determining whether skills are transferable, the regulations direct consideration of the following:

> (1) What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.
>
> (2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in which—
> (i) The same or a lesser degree of skill is required;
> (ii) The same or similar tools and machines are used; and
> (iii) The same or similar raw materials, products, processes, or services are involved.
>
> (3) Degrees of transferability. There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability.

4

> However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable.

20 C.F.R. § 404.1568(d)(1)-(3).

The Table of Medical-Vocational Guidelines (the "Grids") "requires that a claimant of advanced age who is at least a high school graduate, who previously held a skilled or semi-skilled job that he can no longer perform but who has the residual functional capacity to perform light work, is not to be found disabled if he has job skills that are transferable but must be found disabled if he does not." *Draegert v. Barnhart*, 311 F.3d 468, 473 (2d Cir. 2002) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 202.07, 202.06).

A skill is defined as follows:

> knowledge of a work activity which requires the *exercise of significant judgment* that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). *It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner…* A skill gives a person a special advantage over unskilled workers in the labor market.

*Titles II & Xvi: Work Skills & Their Transferability As Intended by the Expanded Vocational Factors Regulations Effective Feb. 26, 1979*, SSR 82-41 (S.S.A. 1982) (emphasis added). Skills can encompass "experience and demonstrated proficiency with work activities in particular tasks or jobs." *Id.* A skill is transferable when the claimant can apply work skills "demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." *Id.*

In this case, Plaintiff avers that the "skills" the VE testified Plaintiff had acquired are not actually skills. The Commissioner maintains that the "skills" identified by the VE do in fact meet the definition of skill. The Court agrees with the Commissioner. The VE's testimony shows that Plaintiff learned to "exercise significant judgment" including differentiating between

suspect and non-suspect behavior and putting into practice learned security measures. *See* SSR 82-41. These skills would additionally require Plaintiff to take his prior "knowledge of the principles and processes of" security procedures and "apply them in practice in a proper and approved manner." *Id.*

These skills are transferrable to the security guard position because "the same or a lesser degree of skill is required," and "the same or similar… processes[] or services are involved." *See* 20 C.F.R. § 404.1568(d)(2). For example, the Dictionary of Occupational Titles definition of security guard includes descriptions such as warning violators of rule infractions, apprehending or expelling miscreants, watching for and reporting irregularities, observing departing personnel to guard against theft, and sounding an alarm or calling police or fire departments when necessary.[4] This definition shows that similar processes or services are involved in carrying out both positions. A security guard, like an armed guard, must exercise significant judgment and apply prior knowledge of security processes in a proper manner. In all, the ALJ's finding that Plaintiff acquired skills transferrable to the security guard position was not erroneous and is supported by substantial evidence.[5]

---

[4] Dictionary of Occupational Titles, 372.667-034, available at http://www.occupationalinfo.org/37/372667034.html.

[5] At oral argument, Plaintiff presented the point that because he was sixty years of age at the time of the hearing, the ALJ should have analyzed the period of time from age sixty onward under the transferability rule applicable to those "closely approaching retirement age." 20 C.F.R. § 404.1568(d)(4). The relevant regulation reads as follows:
> If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is *so similar to* your previous work that you would need to make *very little, if any, vocational adjustment* in terms of tools, work processes, work settings, or the industry.

20 C.F.R. § 404.1568(d)(4) (emphasis added). Even assuming this point is not waived for failure to raise it earlier in the adjudication process, the argument is without merit. The Court finds, for

    2. Treating physician opinions

Plaintiff also argues that the ALJ erred in dismissing the opinion of his primary care physician, Dr. Russell, and in instead giving weight to the opinions of a consultative examiner and a non-examining state agency medical consultant. Dr. Russell completed a Physical Capacity Statement in which he essentially opines that Plaintiff was not capable of full-time work. (R. 541-55). The ALJ gave this opinion little weight because it was based on "only mild to moderate tenderness and mild to moderate restriction of range of motion of the low back and left shoulder, which have required only conservative treatment." (R. 25).

The treating physician rule provides that a treating source's opinion on the nature or severity of a claimant's impairments will be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). When an ALJ declines to give such an opinion controlling weight, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Those factors include "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 404.1527(c)(2). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight assigned. *Burgess,* 537 F.3d at 129.

---

the reasons discussed above, that the security guard position is "so similar" to the armed guard position that Plaintiff "would need to make very little, if any, vocational adjustment." *Id.*

Here, the ALJ did not err in giving little weight to Dr. Russell's opinion. The opinion is not well-supported by the record, including by Dr. Russell's treatment notes which indicate only mild to moderate pain and mild to moderate decreased range of motion in the lower back; his notes also regularly indicate normal gait, normal sensation and reflexes, and good range of motion in the hips. (R. 322, 326, 364). Dr. Russell's opinion is also not consistent with the other evidence of record, including the opinion of consultative examiner Dr. Abeles, whose findings upon physical examination were largely normal, and who concluded that Plaintiff was a man who indicated "that he is currently looking for a job." (R. 371-72). Finally, Plaintiff's testimony at the hearing calls into question the reliability of Dr. Russell's opinion: Dr. Russell stated that Plaintiff could stand for 30 minutes at a time before needing to sit down, walk around, or lie down. (R. 453). This is directly at odds with Plaintiff's statement that he could stand for five to six hours while working as an armed guard *after* his alleged disability onset date. (R. 45). In all, the ALJ did not err in not adopting the more restrictive findings in Dr. Russell's opinion.

    3. Consideration of obesity

Finally, Plaintiff contends that the ALJ failed to meaningfully consider his obesity both on its own and in relation to his other impairments. An ALJ is indeed required to consider obesity in conjunction with a claimant's other impairments throughout the sequential evaluation process. *See Crossman v. Astrue*, 783 F. Supp. 2d 300, 309-10 (D. Conn. 2010); SSR 02-1p; *Titles II and XVI: Evaluation of Obesity*, 67 FR 57859-02. The ALJ did that here: he specifically discussed obesity when explaining the RFC finding, and so appropriately considered any effect obesity had on Plaintiff's ability to perform work-related functions. (R. 22). In addition, when, as here, the ALJ bases his decision on medical reports that document a claimant's obesity, the ALJ properly considered it. *See Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011) (finding

that the ALJ considered the claimant's obesity in the RFC determination by relying on medical records which noted the obesity and "provided an overall assessment of [claimant's] work-related limitations."). There is no error.

## **Conclusion**

After a thorough review of the administrative record and consideration of all of the arguments raised by Plaintiff, the Court concludes that the ALJ did not commit any legal errors and that his decision is supported by substantial evidence. Accordingly, the Court recommends that Defendant's Motion to Affirm the Decision of the Commissioner [Doc. # 15] should be granted and that Plaintiff's Motion to Reverse [Doc. # 14] should be denied.

This is a Recommended Ruling. *See* Fed. R. Civ. P. 72(b)(1). Any objection to this Recommended Ruling must be filed within 14 days after service. *See* Fed. R. Civ. P. 72(b)(2). In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to transfer this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part. *See* Fed. R. Civ. P. 72(b)(3) and D. Conn. Local Rule 72.1(C)(1) for Magistrate Judges.

SO ORDERED, this  7th  day of March, 2016, at Bridgeport, Connecticut.

   */s/ William I. Garfinkel*
   WILLIAM I. GARFINKEL
   United States Magistrate Judge